IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REGINALD COOPER,

    Petitioner,                        No. CIV S-10-0234 JAM EFB P

    vs.

GARY SWARTHOUT,

    Respondent.                    FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding *in propria persona* with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at a parole consideration hearing held on February 25, 2009. He claims that the Board's 2009 decision finding him unsuitable for parole violated his federal right to due process and the Ex Post Facto Clause.

        As discussed below, the United States Supreme Court has held that the only inquiry on federal habeas review of a denial of parole is whether the petitioner has received "fair procedures" for vindication of the liberty interest in parole given by the state. *Swarthout v. Cooke*, 562 U.S. ___, No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011) (per curiam). In the context of a California parole suitability hearing, a petitioner receives adequate process when he/she is allowed an opportunity to be heard and a statement of the reasons why parole was

1

denied. *Id.* at \*\*2-3 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 16 (1979). For the reasons that follow, applying this standard here requires that the petition for writ of habeas corpus be denied on petitioner's due process claim.

**I. Procedural Background**

Petitioner is confined pursuant to a 1992 judgment of conviction entered against him in the Los Angeles County Superior Court following his conviction on charges of first degree murder, assault causing great bodily injury, and attempted robbery. Pet. at 1.[1] Pursuant to that conviction, petitioner was sentenced to twenty-five years to life in state prison. *Id.*

The parole consideration hearing that is placed at issue by the instant petition was held on February 25, 2009. *Id.* at 93. Petitioner appeared at and participated in the hearing. *Id.* at 95-157. Following deliberations held at the conclusion of the hearing, the Board panel announced their decision to deny petitioner parole for three years and the reasons for that decision. *Id.* at 158-65.

Petitioner challenged the Board's 2009 decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court. Answer, Ex. 1. The Superior Court denied that petition in a decision on the merits of petitioner's claims. *Id.*, Ex. 2. Petitioner subsequently challenged the Board's 2007 decision in a petition for writ of habeas corpus filed in the California Court of Appeal and a petition for review filed in the California Supreme Court. *Id.*, Exs. 3, 6. Those petitions were summarily denied. *Id.*, Exs. 5, 7.

////
////

---

[1] Page number citations such as these are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

## II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

3

unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

**III. Petitioner's Claims**

    **A. Due Process**

Petitioner claims that the Board's 2009 decision finding him unsuitable for parole violated his Fourteenth Amendment right to due process because it was not supported by "some evidence" that he posed a current danger to society if released from prison. Pet. at 25-32.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981); *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Hayward v. Marshall*, 603 F.3d 546, 561 (9th Cir. 2010) (en banc).

4

However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *Greenholtz*, 442 U.S. at 12). *See also Allen*, 482 U.S. at 376-78.

California's parole scheme[2] gives rise to a liberty interest in parole protected by the federal due process clause. *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."); *see Swarthout v. Cooke*, No. 10-333, 562 U.S. ___, 2011 U.S. LEXIS 1067, *5-6 (Jan. 24, 2011) (per curiam) (stating that the Ninth Circuit's determination that California's parole law creates a liberty interest protected by the federal due process clause "is a reasonable application of our cases."). However, the United States Supreme Court has held that correct application of California's "some evidence" standard is not required by the federal Due Process Clause. *Swarthout*, 2011 WL 197627, at *2. Rather, this court's review is limited to the narrow question of whether the petitioner has received adequate process for seeking parole. *Id.* at *3. ("Because the only federal right at issue is procedural, the relevant inquiry is what process [petitioner] received, not whether the state court decided the case correctly.") Adequate process is provided when the inmate is allowed a meaningful opportunity to be heard and a statement of the reasons why parole was denied. *Id.* at **2-3 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz*, 442 U.S. at 16.

Here, the record reflects that petitioner was present at the 2009 parole hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's decision to

---

[2] In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).

5

deny parole. Pursuant to *Swarthout*, this is all that due process requires. Accordingly, petitioner is not entitled to relief on his due process claim.

### B. Ex Post Facto

Petitioner claims that the Board's application of a change in California Penal Code § 3041.5(b)(2)[3] to delay his next parole hearing for a period of three years violated the Ex Post Facto Clause of the United States Constitution. Pet. at 22-25. Under the statute as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates like petitioner were denied parole for one year unless the Board found, with stated reasons, that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years. Cal. Pen. Code § 3041.5(b)(2) (2008). However, at his 2009 parole hearing petitioner was subject to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for seven, ten, or even fifteen years. Cal. Pen.Code, § 3041.5(b)(3) (2010). Petitioner asserts that application of the extended deferral period violates the Ex Post Facto Clause because it increases the risk that he will serve a longer prison term than he would have served under the prior statute. Pet. at 23. He points out that Marsy's Law appears to eliminate the Board's authority to schedule his next parole suitability hearing within the following three years. *Id.* at 23-24.

In the only reasoned decision on this claim, the Los Angeles County Superior Court rejected petitioner's arguments:

> Petitioner argues that the Board's application of The Victims' Bill of Rights Act of 2008, or Marsy's Law, in this case violates the ex post facto clause of the California and United States Constitutions. "This ban prohibits changes to criminal laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Collins v. Youngblood* (1990) 497 U.S. 37, 43.) Prior to the passage of Marsy's Law, California Penal Code § 3041.5(3)(b) allowed the Board to delay a subsequent suitability

---

[3] The change to California Penal Code § 3041.5(b)(2) resulted from the passage of Proposition 9 in 2008. The statutes enacted and statute modifications made pursuant to Proposition 9 are collectively known as "Marsy's Law."

6

> hearing "up to five years after any hearing at which parole is denied if the prisoner has been convicted of murder and the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding in writing." However, the default denial period was one year. Under the amended statute, the Board shall schedule the next hearing fifteen years after the hearing unless the Board finds by clear and convincing evidence that such a period is not necessary to protect the public and the victim's safety. The minimum length for a denial under Marsy's Law is now three years. Petitioner contends that because Marsy's Law increases the length of time before his next subsequent parole suitability hearing, it impermissibly increases the punishment for his criminal acts.
>
> The United States Supreme Court held that a similar previous change to California's parole statute did not violate the ex post facto clause because "it left untouched [the prisoner's] indeterminate sentence and the substantive formula for securing any reductions to the sentencing range." (*California Department of Corrections v. Morales* (1995) 514 U.S. 499.) Marsy's Law did not increase petitioner's indeterminate life sentence. The Board evaluated petitioner based on the same substantive factors that were in effect prior to its passage. Furthermore, since petitioner is serving a life sentence for murder, the Board could have delayed his next hearing for up to five years prior to the current amendment. Therefore, it is speculative to assume that the three year denial he received is any longer than it would have been under the prior statute.
>
> Accordingly, the petition is denied.

Answer, Ex. B.

The United States Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. A law violates the Ex Post Facto Clause of the United States Constitution if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. *Collins v. Youngblood*, 497 U.S. 37, 52 (1990). The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003) (quoting *Souch v. Schaivo*, 289 F.3d 616, 620

7

(9th Cir. 2002)). *See also Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995). The Ex Post Facto Clause is also violated if: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes. *Himes*, 336 F.3d at 854. Not every law that disadvantages a defendant is a prohibited ex post facto law. The retroactive application of a change in state parole procedures violates ex post facto only if there exists a "significant risk" that such application will increase the punishment for the crime. *See Garner v. Jones*, 529 U.S. 244, 259 (2000).

California Penal Code section 3041.5 has been amended several times since the date of petitioner's conviction to allow for longer periods of time between parole suitability hearings. Ex Post Facto challenges to those amendments have all been rejected. *See Morales*, 514 U.S. at 509 (1981 amendment to Cal. Penal Code § 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); *Watson v. Estelle*, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the implementation of California's Determinate Sentence Law in 1977); *Clifton v. Attorney General Of the State of California*, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (same). *See also Garner,* 529 U.S. at 249 (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years, in an action brought pursuant to 42 U.S.C. § 1983); *Wilkinson v. Dotson*, 544 U.S. 74 (2005) (holding that inmates are not required to bring their challenges to the constitutionality of state parole procedures in habeas petitions exclusively, but may pursue their claims in § 1983 actions.

Recently the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the

8

amended deferral periods established by Marsy's Law. *Gilman v. Schwarzenegger*, ___ F.3d ___, No. 10-15471, 2011 WL 198435 (9th Cir. Jan.24, 2011). The court found it unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post Facto Clause. The court initially compared and contrasted Marsy's Law with existing Supreme Court precedent:

> Here, as in *Morales* and *Garner*, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole. However, the changes to the frequency of parole hearings here are more extensive than the change in either *Morales* or *Garner*. First, Proposition 9 increased the maximum deferral period from five years to fifteen years. This change is similar to the change in *Morales* (i.e., tripled from one year to three years) and the change in *Garner* (i.e., from three years to eight years). Second, Proposition 9 increased the minimum deferral period from one year to three years. Third, Proposition 9 changed the default deferral period from one year to fifteen years. Fourth, Proposition 9 altered the burden to impose a deferral period other than the default period . . . . Neither *Morales* nor *Garner* involved a change to the minimum deferral period, the default deferral period, or the burden to impose a deferral period other than the default period.

2011 WL 198435, at *5. However, the Ninth Circuit found these distinctions non-dispositive due to the availability of advance parole hearings at the Board's discretion, reasoning that, "as in *Morales*, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing ." *Id.* at *6 (quoting *Morales*, 514 U.S. at 513). The court concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and thus found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.[4]

---

[4] One district court has dismissed a petitioner's challenge to Marsy's Law on the ground that it improperly duplicates the class action claim still pending on the merits in *Gilman*. *See Bryant v. Haviland*, No. CIV S-09-CV-3462 GEB CHS P, 2011 WL 23064, *2-5,15 (E.D.Cal., Jan.4, 2011).

9

In light of these cases, the state court's rejection of petitioner's Ex Post Facto claim was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Therefore, petitioner is not entitled to relief on that claim.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED: March 23, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

10